UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

TAMMY KRAFT,

                Plaintiff,

v.

NANCY A. BERRYHILL, Deputy Commissioner of Social Security for Operations,

                Defendant.

CASE NO. C17-1467-MAT

ORDER RE: SOCIAL SECURITY DISABILITY APPEAL

Plaintiff Tammy Kraft proceeds through counsel in her appeal of a final decision of the Commissioner of the Social Security Administration (Commissioner). The Commissioner denied plaintiff's application for Supplemental Security Income (SSI) after a hearing before an Administrative Law Judge (ALJ). Having considered the ALJ's decision, the administrative record (AR), and all memoranda of record, this matter is AFFIRMED.

**FACTS AND PROCEDURAL HISTORY**

Plaintiff was born on XXXX, 1963.[1] Plaintiff has a GED and previously worked as a general office clerk, scorekeeper, cutting machine tender, pizza deliverer, and order clerk, food and beverage. (AR 211, 864.)

---

[1] Dates of birth must be redacted to the year. Fed. R. Civ. P. 5.2(a)(2) and LCR 5.2(a)(1).

ORDER
PAGE - 1

Plaintiff protectively filed an application for SSI on November 29, 2011, alleging disability beginning February 27, 2009. (AR 184.) The period under consideration begins on November 29, 2010, one year prior to the protective filing date. 20 C.F.R. §§ 416.335, 416.912(d). (*See also* AR 850.) The application was denied initially and on reconsideration.

ALJ Wayne Araki held a hearing on June 4, 2013, taking testimony from plaintiff and a vocational expert (VE). (AR 29-64.) On July 24, 2013, the ALJ issued a decision finding plaintiff not disabled. (AR 12-22.) After the Appeals Council denied review (AR 2-6), plaintiff appealed to this Court. In an August 13, 2015 decision, the Court remanded for further administrative proceedings. (AR 947-57.)

The ALJ held a second hearing on June 28, 2016, taking testimony from plaintiff and a VE (AR 876-919), and updated the record (*see* AR 850-51). In a decision dated September 30, 2016, the ALJ again found plaintiff not disabled through the date of the decision. (AR 850-67.)

Plaintiff timely appealed and the Appeals Council found no basis for changing the ALJ's decision. (AR 838-41.) The ALJ's September 2016 decision became the final decision of the Commissioner and plaintiff appealed to this Court. (AR 839); 20 C.F.R. § 416.1484.

## **JURISDICTION**

The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

## **DISCUSSION**

The Commissioner follows a five-step sequential evaluation process for determining whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920 (2000). At step one, it must be determined whether the claimant is gainfully employed. The ALJ found plaintiff had not engaged in substantial gainful activity since the application date. At step two, it must be determined whether a claimant suffers from a severe impairment. The ALJ found the following

impairments severe: organic mental disorders; affective disorder/depression; anxiety disorder/ post-traumatic stress disorder (PTSD) v. attention deficit hyperactivity disorder (ADHD); degenerative disc disease; peripheral neuropathy/carpal tunnel syndrome; and migraines/ headaches. Step three asks whether a claimant's impairments meet or equal a listed impairment. The ALJ found plaintiff's impairments did not meet or equal the criteria of a listed impairment.

If a claimant's impairments do not meet or equal a listing, the Commissioner must assess residual functional capacity (RFC) and determine at step four whether the claimant has demonstrated an inability to perform past relevant work. The ALJ found plaintiff able to perform light work, with the following limitations: able to remember and understand instructions for tasks generally required by occupations with a Specific Vocational Preparation (SVP) of 1-2; able to carry out instructions for tasks generally required by occupations with an SVP of 1-2; can have occasional face-to-face interactions with the general public, with no restrictions on over the phone interaction; can have occasional interactions with co-workers and supervisors; can lift and/or carry twenty pounds occasionally and ten pounds frequently; can stand and/or walk about six hours per day; can sit about six hours per day; can never climb ladders, ropes, or scaffolds; can occasionally climb stairs and ramps; can occasionally balance, stoop, kneel, crouch or crawl; and can have occasional exposure to hazards and vibrations. With that assessment, the ALJ found plaintiff unable to perform her past relevant work.

If a claimant demonstrates an inability to perform past relevant work, or has no past relevant work, the burden shifts to the Commissioner to demonstrate at step five that the claimant retains the capacity to make an adjustment to work that exists in significant levels in the national economy. With the assistance of the VE, the ALJ found plaintiff capable of performing other jobs, such as work as a production line solderer, electrical accessories assembler, semiconductor wafer

breaker, semiconductor die loader, and order clerk, food and beverage.[2] The ALJ also found that, with the addition of a limitation to frequent bilateral fingering/handling, plaintiff would still be able to perform the jobs of production line solderer and electrical accessories assembler, and could also perform the jobs of circuit board assembler and document preparer. The ALJ observed that, except for a document preparer, all of the occupations identified are performed in a factory setting and do not require any public contact or interaction, that the document preparer job is performed in an office setting and requires very little face-to-face contact, and found that, even excluding the document preparer job, there are still a significant number of jobs plaintiff could perform.

This Court's review of the ALJ's decision is limited to whether the decision is in accordance with the law and the findings supported by substantial evidence in the record as a whole. *See Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993). *Accord Marsh v. Colvin*, 792 F.3d 1170, 1172 (9th Cir. 2015) ("We will set aside a denial of benefits only if the denial is unsupported by substantial evidence in the administrative record or is based on legal error.") Substantial evidence means more than a scintilla, but less than a preponderance; it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). If there is more than one rational interpretation, one of which supports the ALJ's decision, the Court must uphold that decision. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

Plaintiff argues the ALJ erred by failing to properly consider the severity of her migraine headaches. She challenges the ALJ's reasons for rejecting her migraine-related symptom

---

[2] The ALJ's decision indicates both that plaintiff can and cannot perform past relevant work as a food and beverage order clerk. (AR 864, 866.) The VE testified plaintiff could perform that past relevant work, as it is generally performed, both with the RFC assessed and with an additional restriction to frequent fingering and handling. (AR 913, 915-16.)

ORDER
PAGE - 4

testimony and the RFC assessed. Plaintiff requests remand to the Commissioner for a new hearing with instructions to correct the legal errors and render a new decision. The Commissioner argues the ALJ's decision has the support of substantial evidence and should be affirmed.

### Symptoms of Migraine Headaches

In 2013, plaintiff testified she would be unable to work as a result of migraine headaches. (*See* AR 858.) In 2016, plaintiff testified her condition had worsened. (*See id*.) She could no longer use a computer because the glare from the screen triggered headaches. After trying several medicines, plaintiff no longer treated her headaches, except for home remedies, such as resting in a cool, quiet, and dark room. She spent three-to-four days in bed because of severe migraines, and vomiting helped ease the migraines.

Absent evidence of malingering, an ALJ must provide specific, clear, and convincing reasons to reject a claimant's testimony. *Burrell v. Colvin*, 775 F.3d 1133, 1136-37 (9th Cir. 2014) (citing *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012)). *See also Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1996).[3] The ALJ may consider a claimant's "reputation for truthfulness, inconsistencies either in his testimony or between his testimony and his conduct, his daily activities, his work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains." *Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).

The ALJ found plaintiff's statements concerning the intensity, persistence, and limiting

---

[3] While the Social Security Administration eliminated the term "credibility" from its sub-regulatory policy addressing symptom evaluation, *see* Social Security Ruling (SSR) 16-3p, case law containing that term remains relevant.

ORDER
PAGE - 5

effects of her symptoms not entirely consistent with the medical evidence and other evidence in the record. Considering plaintiff's migraine headaches, the ALJ stated:

> The claimant's primary alleged physical limitations stem from her migraine headaches. However, it appears from the record that the claimant is not as limited as she alleged. In fact, it appears that the claimant was prescribed medication for her migraine headaches by her treating neurologist, Kelvin Ma, MD, in February 2013 ([AR 556]), but it was noted weeks later that she had yet to start taking those medications. ([AR 553]). Additionally, there is no evidence in the record to indicate she has sought any acute treatment for her migraine headaches. Thus, the claimant's lack of treatment in addition to her failure to take medication suggests that her symptoms are not as significant as she has alleged.

(AR 858.) The ALJ contrasted plaintiff's testimony her migraines are severe to the point that she vomits, with her report to treating physician Dr. David Elkayam that she never actually does, and found this to suggest symptom magnification. (AR 859.) The ALJ found evidence consistently stating plaintiff is not in any acute distress to conflict with her allegation her migraines caused constant, severe pain. (AR 860 (citations to record omitted).)

The ALJ also discussed migraines in addressing medical opinion evidence from Dr. Tedd Judd. (AR 861.) After contrasting the allegation of disabling migraine headaches with updated evidence consistently showing plaintiff is not in any acute distress, the ALJ stated: "Dr. Judd specifically notes that the, 'notes that I received from Dr. Chobanov made no mention of migraine.'" (*Id.* (quoting AR 1350).) The ALJ found plaintiff's allegation of disabling headaches more consistent with Dr. Judd's impression plaintiff may experience somatization disorder-type symptoms. He found further evidence for this in Dr. Judd's opinion plaintiff "'rates herself as very high on ADHD characteristics,' and that her current self-perception of having concentration and memory difficulties is probably due to depression, the distracting effects of headaches and possibly other of her medical conditions.'" (*Id.*)

A. <u>Failure to Take Medication</u>

Plaintiff reads the record from Dr. Ma to suggest she was already taking Imitrex, or had recently taken it, at the time Dr. Ma prescribed new medication in the form of Depakote and Maxalt. (*See* AR 553-56.) She observes that only twelve days, not "weeks," had passed at the point Dr. James Prickett noted plaintiff had not started medication. (*Id.*) Plaintiff contends Dr. Prickett may have been mistaken. That is, Dr. Ma indicated he "started" plaintiff on Depakote, and Dr. Prickett stated, "Per computer", plaintiff had "yet to start medication" for her migraine. (AR 553, 556.)

"[T]he ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). *Accord Carmickle v. Comm'r of SSA*, 533 F.3d 1155, 1164 (9th Cir. 2008); *Thomas*, 278 F.3d at 956-57. The ALJ must support his findings with "specific, cogent reasons." *Reddick*, 157 F.3d at 722. When evidence reasonably supports either confirming or reversing the ALJ's decision, the Court may not substitute its judgment for that of the ALJ. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). "Where the evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." *Morgan v. Commissioner of the SSA*, 169 F.3d 595, 599 (9th Cir. 1999).

Because less than two full weeks had passed at the time Dr. Prickett noted plaintiff had not started medication, the ALJ inaccurately used the term "weeks." However, the Court finds this descriptive error harmless. *See Molina*, 674 F.3d at 1115 (error may be deemed harmless where it is "'inconsequential to the ultimate nondisability determination.'"; the court looks to "the record as a whole to determine whether the error alters the outcome of the case."). Considering the record and the decision as a whole, the ALJ's interpretation of the evidence is properly deemed rational

and supported by substantial evidence.

At the February 7, 2013 appointment with Dr. Ma, plaintiff appeared with the chief complaint of headaches, stated Imitrex "did not work" and that "Topamax was not tried" due to her kidney stones, and reported she was "not on any prophylactic medication at this point." (AR 555.) Imitrex, like the Maxalt prescribed by Dr. Ma, is acute (abortive) medication, used to stop migraines, while the Depakote Dr. Ma prescribed is preventive (prophylactic) medication, used to prevent migraines from occurring. (*See* AR 556); https://americanmigrainefoundation.org/treatment-options. Dr. Ma's treatment notes are reasonably read as reflecting plaintiff was not using Imitrex or any prophylactic medication, including Depakote, at the time of the appointment. Likewise, the report from Dr. Prickett is reasonably read as reflecting plaintiff had "yet to start" the medications prescribed by Dr. Ma. (AR 553.) Notably, Dr. Pricket used the phrase "Per computer" not only in discussing medications, but also in describing plaintiff's vital signs on the day of the appointment. *Id*. ("Per computer. Pain scale today is 4/10, it is a general aching pain.")) The ALJ rationally construed the evidence to support the conclusion plaintiff had failed to start prescribed medications, including one intended to prevent migraines, and that this failure to comply with recommended treatment undercut her testimony as to the severity of her condition. *See* 20 C.F.R. § 416.929(c)(3) (treatments or other methods used to alleviate symptoms is "an important indicator of the intensity and persistence of your symptoms"); *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (ALJ appropriately considers an unexplained or inadequately explained failure to follow a prescribed course of treatment).

B.  Evidence Considered

Plaintiff maintains the ALJ isolated bits of evidence to support his conclusion, while ignoring vast amounts of evidence supporting her claim. She asserts a twenty-six year period,

ORDER
PAGE - 8

from September 1990 to the June 2016 hearing, of reporting and seeking treatment for migraines and headaches. (*See* Dkt. 11 at 4-5.) Plaintiff states this same evidence shows she used twenty-nine different medications in her attempts to treat her condition. (*Id*. at 5.) Plaintiff suggests that this could explain why, if true, she did not immediately start the Depakote prescribed by Dr. Ma.

There is no question plaintiff complained about, sought treatment, and utilized a number of different medications for migraines and headaches during the time period under consideration, that is, beginning November 29, 2010 and extending through the ALJ's decision. (*See, e.g*., AR 347, 275, 280, 289-90, 485, 587, 1297-98, 498-504, 508-09, 1277-80, 1249-52 1237-38, 1214-18, 1190-93, 1150, 1179, 1170).) Plaintiff also cites to records from an earlier time, dated from at least as early as 1982 and extending through 1995. (*See* AR 633-769.) Plaintiff explained the gap in this history in testifying that, prior to the time she stopped working in 2009, she had gone some eight-to-ten years without suffering migraines. (AR 41-42, 57, 903-04.)

The ALJ did not ignore plaintiff's long history of migraines and treatment. The ALJ explicitly found plaintiff "has required longstanding treatment for her headaches[,]" and reported a history of headaches occurring three-to-four times a week. (AR 853 (citing AR 633-37 and 371).) Moreover, a review of the record reveals mixed results in plaintiff's use of medications, as well as reminders to take a different prescribed prophylactic (Metroprolol). (*See, e.g.*, AR 371-72 (November 2011: plaintiff managed earlier migraines "with vicodin about #30/month."; "She had tried imitrex shots in past but does not think she had tried oral medication – would like to give them a try."); AR 368-69 (December 2011: "She has used sumatriptan successfully in past and still has some."); AR 1311 (May 2013: reporting she did not tolerate Depakote or Immitrex well); AR 1277-80 (February 2014: reporting prevention medication not helpful, but use of Norco when severe), AR 1249-52 (August 2014: describing medications that did not help); AR 1246

(September 2014: she only took Verapamil for about 4 or 5 days, after which someone took all her medications, was not sure if helped, but did not have any side effects); AR 1237-38 (March 2015: discussed restarting Metoprolol for migraine prevention); AR 1229-30 (May 2015: reporting "occasional severe migraines."; discussed importance of taking Metoprolol for blood pressure control; plaintiff "will begin taking it tonight."); AR 1214-18 (October 2015: advised to take Metoprolol regularly for prevention and that a prescription for Norco was "only brief medication for severe headaches – not an ongoing migraine treatment med."); AR 1190-93 (December 2015: "quite disabling" chronic migraines; reported she did not tolerate Verapamil or Metoprolol, or find help with Sumatriptan or Maxalt; prescribed Tizanidine and would consider adding Gabapentin); AR 1179-82 (January 2016: plaintiff started on Metoprolol, thought it had helped somewhat, and provider suggested doubling dose to help with prevention).) Plaintiff does not demonstrate error in the consideration of the evidence.

C.  Acute Treatment

Plaintiff disputes the finding she did not seek acute treatment for migraines. However, she cites only to evidence dated long before November 29, 2010. A September 1990 report reflects she suffered "relatively severe" headaches approximately every four-to-six weeks, necessitating "several" trips to the emergency room for pain medication. (AR 635.) The other record cited, although dated in August 2012, also describes that earlier period of time. (AR 471-75 (describing onset of migraines in about 1986: "Dr. McNichols diagnosed migraines. Imitrex did not help. She got 30 Vicodin/month and she made them last. She had some Emergency Room visits for shots of Demerol that knocked her out for 2 days. At that time she owned a pizza parlor in Blaine and was able to work around the headaches. She had the headaches for about 12 years. . . . Her headaches resumed around October, 2008.").) At best, the evidence cited by plaintiff in support

of her argument shows she reported a headache in August 2012 and, after a neuropsychological interview, went home and called to reschedule afternoon testing due to her headache. (*Id*.) The ALJ's conclusion the evidence consistently showed she was not in acute distress has the support of substantial evidence. (AR 860 (citing AR 1181, 1186, 1192, 1198, 1210, 1216, 1220, 1232, 1235, 1242, 1246, 1260, 1278, 1285, 1317, 1297, 1327)).)

Plaintiff explains the failure to appear in acute distress as based on the fact she used the typical treatment of lying down in a dark, cool, quiet place, and that going to a doctor would increase her symptoms due to her light sensitivity. She asserts she did not suffer the typical symptoms requiring emergency room treatment for migraines. (*See* Dkt. 11 at 7.) However, while perhaps a rational interpretation of the evidence, the ALJ likewise rationally found a discrepancy between plaintiff's report of suffering migraine headaches three-to-four days a week and her consistent appearance at numerous medical appointments in no acute distress. In addition, and contrary to plaintiff's suggestion, it is apparent the ALJ considered plaintiff's lack of acute treatment, rather than finding plaintiff lacked treatment as a general matter. (*See* AR 858 ("Additionally, there is no evidence in the record to indicate that she has sought any acute treatment for her migraine headaches. Thus, the claimant's lack of treatment in addition to her failure to take medication suggests that her symptoms are not as significant as alleged."))

D.  Inconsistencies

Plaintiff takes issue with the ALJ's finding of inconsistency between her 2016 testimony she occasionally vomited as a result of her migraines (AR 905) and her 2013 report to Dr. David Elkayam that she feels very ill with migraines, "as though she needs to vomit, but never does." (AR 820.) Plaintiff notes she did not volunteer the testimony as to vomiting, and merely answered a specific question from the ALJ, and argues it is reasonable to assume symptoms would change

over the course of twenty-six years. The record also contains evidence that, in 1993, she reported vomiting while suffering a migraine. (AR 740, 743.)

An ALJ appropriately considers inconsistency with the evidence and a tendency to exaggerate in rejecting a claimant's testimony. *See Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001); 20 C.F.R. § 416.929(c)(4). In this case, given that three years had passed since her report to Dr. Elkayam, the Court agrees the ALJ unreasonably found inconsistency with plaintiff's testimony regarding vomiting. However, the Court also finds this error harmless in light of the other reasons for discounting plaintiff's testimony. *See Molina*, 674 F.3d at 1115, and *Carmickle*, 533 F.3d at 1162-63.

As discussed above, the ALJ reasonably discounted plaintiff's symptom testimony based on the absence of evidence plaintiff sought acute treatment for migraines and the evidence she failed to follow prescribed treatment. The ALJ also, as discussed below, reasonably considered relevant evidence from Dr. Judd. The ALJ further found plaintiff's allegations of significant difficulties with her hands and feet inconsistent with the objective evidence and with improvement following a carpal tunnel release procedure; inconsistency in plaintiff's reporting as to why she stopped working and regarding her receipt of unemployment benefits; inconsistency between her testimony of isolating at home three-to-four days a week and experiencing overwhelming depression and recent evidence of her presentation, abilities, and demeanor at medical appointments; and inconsistency between her allegation of disabling mental impairments and evidence showing her good insight into, ability to improve, and progress with her mental health. (AR 858-61.)

In her reply brief, plaintiff challenged the other reasons offered in support of the ALJ's assessment of her symptom testimony. Yet, plaintiff waived such challenges in failing to raise

them in her opening brief. *Zango, Inc. v. Kaspersky Lab, Inc.*, 568 F.3d 1169, 1177 n.8 (9th Cir. 2009). In any event, even if properly raised, the Court would not find reversible error. The ALJ, for example, reasonably found a lack of consistency in plaintiff's reporting as to why she stopped working. (*See* AR 210 (April 2012: "I was laid off because my employer knew I was going to have surgery."); AR 471 (August 2012: "The layoffs were due to the economy."); AR 35-36 (June 2013: "I was laid off. . . . I had a domestic violence case. . . . [I was kept off of work' [f]or three weeks. I went back for six and they laid me off. They said I wasn't the same. I just was having issues."); AR 887 (June 2016: "I was laid off. . . . It was lack of work. We had massive layoffs.")) Plaintiff offers a different interpretation of this and other evidence, but does not establish the ALJ's interpretation of inconsistency was not rational.

In addition, the fact that certain of the ALJ's reasons are not directly related to plaintiff's migraines does not undermine their value and relevance to the ALJ's consideration of plaintiff's symptom testimony as a whole. The ALJ properly provided specific, clear, and convincing reasons for the assessment of plaintiff's symptom testimony. *See, e.g., Carmickle*, 533 F.3d at 1161 (ALJ may consider contradiction with the medical record); *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) (ALJ may consider lack of corroboration by objective medical evidence, so long as not the sole ground for rejecting testimony); and *Morgan*, 169 F3d at 599-600 (ALJ may consider inconsistencies between reporting and the evidence, and evidence of improvement).[4]

E. <u>Evidence from Dr. Judd</u>

Plaintiff challenges the ALJ's consideration of Dr. Judd's observation that notes he

---

[4] The Commissioner argues the ALJ also properly considered plaintiff's reported activities in evaluating her symptom testimony. *See* 20 C.F.R. § 416.929(c)(3)(i). However, the ALJ only specifically discussed plaintiff's daily activities at step two. (AR 856.) While the ALJ did note evidence plaintiff was spending time with a neighbor's children at step four, he did so in the context of considering the evidence of improvement in plaintiff's mental health. (AR 860.)

ORDER
PAGE - 13

reviewed did not mention migraines. Dr. Judd stated he saw plaintiff on referral from Dr. Zeljka Chobanov, who had examined plaintiff some five months earlier "for cognitive difficulties and dizziness", and that laboratory results following Dr. Chobanov's initial testing and examination were unremarkable. (AR 1342.) Dr. Judd included the history of conditions plaintiff reported to Dr. Chobanov and later observed Dr. Chobanov's notes "made no mention of migraines." (AR 1342, 1350.)

Plaintiff avers migraines are notoriously difficult to diagnose and cannot be proven by testing. She denies the relevance of Dr. Judd's observation given that the ALJ did not dispute plaintiff suffers from migraines. However, after contrasting plaintiff's allegation of disabling migraines and the absence of updated evidence showing she was not in any acute distress, the ALJ reasonably took note of the fact Dr. Chobanov made no mention of migraines. (AR 861.) The ALJ proceeded to find plaintiff's allegation of disabling headaches "more consistent with Dr. Judd's impression that the claimant may experience somatization disorder-type symptoms." (*Id*.) Plaintiff does not demonstrate the ALJ erred in considering this evidence. For this reason, and for the reasons stated above, the Court does not find reversible error in the ALJ's consideration of the severity of plaintiff's migraine headaches.

RFC

RFC is the most a claimant can do despite limitations and is assessed based on all relevant evidence in the record. 20 C.F.R. § 416.945(a)(1). An RFC must include all of the claimant's functional limitations supported by the record. *See Valentine v. Comm'r SSA*, 574 F.3d 685, 690 (9th Cir. 2009). The "final responsibility" for decision issues such as an individual's RFC "is reserved to the Commissioner." 20 C.F.R. §§ 416.927(d)(2), 416.946(c); Social Security Ruling (SSR) 96-5P. That responsibility includes "translating and incorporating clinical findings into a

succinct RFC." *Rounds v. Comm'r, SSA*, 807 F.3d 996, 1006 (9th Cir. 2015) (citing *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008)).

Plaintiff asserts the ALJ included in the RFC only a few minor limitations that could conceivably be attributed to her migraine headaches. She objects to the absence of a limitation based on her "likely need to miss days of work due to her frequent need to stay at home in bed." (Dkt. 11 at 12.)

The ALJ included limitations in the RFC reasonably understood as accounting for plaintiff's migraines. Those limitations include a restriction to light work, the ability to remember, understand, and carry out instructions generally required for occupations with an SVP of 1-2, limitations in interactions with the general public, co-workers, and supervisors, and various postural and environmental restrictions. (AR 857.)

An RFC assessment, or a hypothetical proffered to a VE, need not account for limitations the ALJ properly rejected. *See Bayliss v. Barnhart*, 427 F.3d 1211, 1217-18 (9th Cir. 2005) ("In making his RFC determination, the ALJ took into account those limitations for which there was record support that did not depend on Bayliss's subjective complaints. Preparing a function-by-function analysis for medical conditions or impairments that the ALJ found neither credible nor supported by the record is unnecessary.") (citing SSR 96-8p). The ALJ here provided specific, clear, and convincing reasons for rejecting plaintiff's testimony concerning the intensity, persistence, and limiting effects of her migraine-related symptoms. He was not required to include in the RFC the limitations alleged by plaintiff. *See Britton v. Colvin*, 787 F.3d 1011, 1013-14 (9th Cir. 2015) (substantial evidence did not support including migraines in hypothetical proffered to VE where there was "no independent medical evidence establishing [the claimant] suffers from migraines three to four days a month, that she must rest when she gets them, and that they last for

ORDER
PAGE - 15

two to four hours, as she claimed."; physician who testified to that effect relied exclusively on the claimant's testimony as to the frequency, duration, and intensity of her migraines and did not constitute substantial evidence because it was based on the claimant's testimony, which the ALJ rejected).  Plaintiff does not point to substantial evidence support for a limitation to "missed days of work" and does not, therefore, demonstrate error in the RFC.  *Cf. Schulz v. Astrue*, 849 F. Supp. 2d 1049, 1053-55 (W.D. Wash. 2011) (ALJ failed to provide legally sufficient reasons to reject treating physician's opinion migraines would cause plaintiff to miss work five times a month; records from treating neurologist consistent with physician's opinion in showing acute migraine attacks multiple times a month, relieved only by receipt of intravenous dilaudid at the emergency room).

## **CONCLUSION**

For the reasons set forth above, this matter is AFFIRMED.

DATED this 4th day of May, 2018.

Mary Alice Theiler
United States Magistrate Judge